1  JEFFREY A. SWEDO  (SBN:  78361)
   jswedo@gordonrees.com
2  STEPHANIE P. ALEXANDER (SBN: 205701)
   salexander@gordonrees.com
3  NATASHA M. WU (SBN: 286163)
   nwu@gordonrees.com
4  GORDON & REES LLP
   2211 Michelson Drive Suite 400
5  Irvine, CA 92612
   Telephone:  (949) 255-6950
6  Facsimile:  (949) 474-2060

7  Attorneys for Defendant
   UBER TECHNOLOGIES, INC.

8

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  KEATHER TAYLOR                    )  CASE NO.
                                      )
13                     Plaintiff,     )
                                      )  **NOTICE OF REMOVAL OF**
14       vs.                          )  **CIVIL ACTION FROM STATE**
                                      )  **COURT TO UNITED STATES**
15  UBER TECHNOLOGIES, INC, and       )  **DISTRICT COURT, CENTRAL**
    DOES 1 through 100, Inclusive     )  **DISTRICT OF CALIFORNIA**
16                                    )
                       Defendants.    )
17                                    )

18       **TO THE JUDGES OF THE UNITED STATES DISTRICT COURT,**

19  **CENTRAL DISTRICT OF CALIFORNIA, AND TO ALL INTERESTED**

20  **PARTIES AND THEIR ATTORNEYS HEREIN:**

21       **PLEASE TAKE NOTICE** that Defendant Uber Technologies, Inc.

22  (hereinafter referred to as "UTI") respectfully submits this Notice of Removal in

23  this civil action from the Superior Court of the State of California for the County of

24  Los Angeles to the United States District Court for the Central District of

25  California, pursuant to 28 U.S.C. §§ 1441 and 1446, based on federal question

26  jurisdiction.   Specifically, Plaintiff Keather Taylor (hereinafter referred to as

27  "Plaintiff") asserts a claim for damages against UTI arising out of an alleged

28  violation of Section 43(A) of The Lanham Act, 15 U.S.C. § 1125.

Gordon & Rees LLP
2211 Michelson Drive Suite 400
Irvine, CA 92612

In support of this Notice of Removal, UTI, through its counsel, states as follows:

## PROCEDURAL BACKGROUND

1.　Plaintiff commenced this action by filing a Complaint in the Superior Court of the State of California for the County of Los Angeles on July 21, 2016 ("Complaint"), styled <u>Keather Taylor v. Uber Technologies, Inc.</u>, Case No. BC627067 ("the State Court Action"). Plaintiff did not effect service of the Complaint on UTI.

2.　Plaintiff filed a First Amended Complaint in the State Court Action on December 1, 2016 ("First Amended Complaint"). A true and correct copy of the First Amended Summons and Complaint is attached hereto as "Exhibit A," in accordance with 28 U.S.C. § 1446(a), and is incorporated by reference.

3.　Plaintiff's First Amended Complaint alleges a violation of Section 43(A) of The Lanham Act, 15 U.S.C. § 1125 (First Amended Complaint, p. 12, ¶ 67.) The First Amended Summons and Complaint was served on UTI on December 16, 2016. UTI has not appeared in the State Court Action.

## BASIS FOR REMOVAL—FEDERAL QUESTION JURISDICTION

4.　Under 28 U.S.C. § 1441(a), any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

5.　Further, 28 U.S.C. § 1441(b) provides that any civil action for which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

6.　This matter may be removed from the state court because this Court has original jurisdiction over claims arising under The Lanham Act, which is a law

Gordon & Rees LLP
2211 Michelson Drive Suite 400
Irvine, CA 92612

1  of the United States.

## TIMELINESS OF REMOVAL

7.     As noted above, the Complaint was served on UTI on December 16, 2016.  UTI's Notice of Removal is therefore timely because UTI has filed this Notice "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

## VENUE

8.     Venue is proper in this district and division because the State Court Action was filed and is pending in the Superior Court of the State of California for the County of Los Angeles, which is located within the federal United States District Court for the Central District of California.

9.     In her First Amended Complaint, Plaintiff alleges that the events or omissions giving rise to this claim occurred in Los Angeles County, California. (First Amended Complaint, p. 5, ¶¶ 24-25.)

## COMPLIANCE WITH REMOVAL PROCEDURES

10.     Defendant has complied with all of the procedural requirements for removal set forth in 28 U.S.C. § 1446.  As noted above, the notice of removal is filed within 30 days of the service of the pleading from which it may first be ascertained that the case is one which is or has become removable.

11.     Plaintiff's allegation of a violation of The Lanham Act is alleged against UTI only.  As a result, only UTI is required to join in or consent to the removal.  28 U.S.C. § 1441(c)(2).

12.     Pursuant to § 1446(d), a copy of this Notice of Removal, including exhibits, is being served on Plaintiff.

/ / /

/ / /

Gordon & Rees LLP
2211 Michelson Drive Suite 400
Irvine, CA 92612

13.     Pursuant to § 1446(d), a copy of this Notice of Removal, including exhibits, will be filed with the Superior Court of the State of California for the County of Los Angeles, in Case No. BC627067.

14.     Copies of all process, pleadings and orders served on the UTI are attached hereto.

WHEREFORE, for the foregoing reasons, UTI removes this action from the Superior Court of the State of California for the County of Los Angeles, Case No. BC627067, to the United States District Court for the Central District of California and respectfully requests that the Court exercise jurisdiction over this action.

DATED:  January 13, 2017                    GORDON & REES LLP

                                            By: _____
                                            Jeffrey A. Swedo
                                            Stephanie P. Alexander
                                            Natasha M. Wu
                                            Attorneys for Defendant UBER
                                            TECHNOLOGIES, INC.

Gordon & Rees LLP
2211 Michelson Drive Suite 400
Irvine, CA 92612

1112750/31118266v.1

# EXHIBIT A

1 | Gary A. Dordick, Esq.  S/B# 128008
Matthew P. Blair, Esq.  S/B# 278411
2 | GARY A. DORDICK, A LAW CORPORATION
509 South Beverly Drive
3 | Beverly Hills, California 90212-4514
Tel: (310) 551-0949 • Fax: (855) 299-4444
4 | **In Association With:**
Antonio Castillo III, Esq.  S/B# 276891
5 | DORDULIAN LAW GROUP, APC
550 North Brand Boulevard, Suite 1990
6 | Glendale, California 91203
Tel: (818) 788-4919 • Fax: (818) 827-2944
7 |
Attorneys for Plaintiff, KEATHER TAYLOR
8 |

**FILED**
Superior Court of California
County of Los Angeles

DEC 01 2016

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Judi Lara

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

11 | KEATHER TAYLOR, an individual,  ) CASE NO.: BC627067
12 | Plaintiff,  ) (Case Assigned for All Purposes to Dept. "98")
13 | v.  ) FIRST AMENDED COMPLAINT FOR DAMAGES:
14 | UBER TECHNOLOGIES, INC.;  )
WALTER ALBERTO PONCE, an  ) 1.  SEXUAL BATTERY
15 | individual; and DOES 1 to 100,  ) 2.  NEGLIGENCE
Inclusive,  ) 3.  INTENTIONAL INFLICTION OF
16 |   ) EMOTIONAL DISTRESS
  ) 4.  FALSE ADVERTISING
17 | Defendants  ) 5.  FRAUD
  ) 6.  VIOLATION OF BUSINESS AND
18 |   ) PROFESSIONS CODE § 17200
  ) 7.  PUNITIVE DAMAGES AGAINST
19 |   ) WALTER ALBERTO PONCE
  ) 8.  PUNITIVE DAMAGES AGAINST
20 |   ) UBER TECHNOLOGIES, INC.
  )
21 | _____ ) [DEMAND FOR JURY TRIAL]
22 |
23 |   COMES NOW PLAINTIFF, KEATHER TAYLOR, an individual, (hereinafter,
24 | "Plaintiff"), who complains and alleges against Defendant UBER TECHNOLOGIES, INC.,
25 | WALTER ALBERTO PONCE, an individual and DOES 1 TO 100, inclusive, (hereinafter
26 | collectively, "Defendants") as follows:
27 | ///
28 | ///

1.

FIRST AMENDED COMPLAINT

## FACTS COMMON TO ALL CAUSES OF ACTION

1.    Uber Technologies Inc. (hereafter "UBER") is a transportation network company that operates in more than 400 cities worldwide, including Los Angeles, California. UBER is essentially a taxi company that has found a loophole in the law and exploited that loophole to skirt rules and regulations that apply to taxis, in particular those that ensure passenger safety. UBER charges its passengers more and provides less.

2.    Defendant UBER advertises itself as the company that has revolutionized transportation by connecting its carefully screened driver-employees to people seeking safe and affordable rides throughout the world.

3.    Defendant UBER markets itself as the preferred and "safe" transportation method for the young "party" crowd. The company's employee-drivers often saturate neighborhoods with bars and nightclubs to provide customers transportation after consuming alcohol.

4.    Defendant UBER markets itself as a "safe" method of transportation for women. UBER's advertising targets women by stating, claiming and depicting words and images that UBER is "safe", safe for women to ride alone, safer than taxis, safe transportation for women after drinking, and can be trusted.

5.    Defendant UBER aggressively promotes its safety by advertising that its employee-drivers are carefully screened to ensure the safety of passengers. Defendant UBER's website states: "A ride you can always trust" and "Uber is dedicated to keeping people safe on the road."

6.    In or about April of 2014, Defendant UBER began charging riders a mandatory one dollar ($1.00) "Safe Rides Fee" when booking transportation.  UBER claims the "Safe Rides Fee" is for the screening and background checks of its potential drivers. Defendant UBER advertises the driver background checks it claims to perform as "industry

2.

FIRST AMENDED COMPLAINT

leading." As a result of recent litigation, UBER continues to charge the mandatory "Safe Rides Fee" but instead now calls it a "Booking Fee."

7.      Defendant UBER's mandatory "Safe Rides Fee" acted to further perpetuate it's claims of safety. Defendant UBER was supposed to use the money to conduct thorough "industry leading" background checks on its drivers prior to allowing them to transport passengers, it did not.

8.      Defendant UBER further advertises that UBER conducts background checks on its drivers to ensure they have no DUI or drug related offenses; no fatal accidents; no history of reckless driving; and no criminal record.

9.      As part of its service, Defendant UBER also encourages its drives, including PONCE to provide water, candy and mints to passengers to improve customer satisfaction. This creates a false trust that the water and mints are safe and gives UBER drivers an opportunity to drug their passengers.

10.     Plaintiff is informed and believes and thereon alleges that from December 2012 through August 2015, that a search query on Uber's Zendesk customer support platform for "sexual assault" returned 6,160 Uber customer support tickets; a search for "rape" returns 5,827 individual tickets. Other variations of the terms yield similarly high returns: A search for "assaulted" shows 3,524 tickets, while "sexually assaulted" returned 382 results. Defendant UBER did not adequately investigate the incidents or take any action to prevent future incidents.

11.     Recognizing the potential dangers presented by Defendant UBER's service, it has taken steps in other countries to protect the safety of its customers. In India, Defendant UBER implemented a "Send Status" option that allows riders to share driver, vehicle and journey details with friends and family, including live GPS tracking, driver's photo, name and license plate number. Additionally, Defendant UBER has implemented a

3.

"SOS button" for its Indian customers that allows riders to call the police emergency number, with two taps of the finger.

12. In California, Defendant UBER does not offer its customers the "send status" safety option or "SOS button."

13. Defendant UBER does not require its California drivers to have cameras in their vehicles; does not monitor routs and take appropriate action when there are deviations from set routs or when drivers do not reach their set destinations; does not screen drivers to protect the general public; and does not fingerprint its drivers to enhance safety, deter misconduct, and protect the general public, including Plaintiff.

14. On July 21, 2014, Defendant PONCE was employed by UBER as a driver.

15. In the early in the morning of July 21, 2014, consuming alcohol at a birthday party and not wanting to drive a vehicle after consuming alcohol, Plaintiff Keather Taylor relied on Defendant UBER's promise of safety and requested a ride from UBER by using her smart phone to request an UBER driver to pick her up and take her to boyfriend's residence. Plaintiff paid the mandatory "Safe Rides Fee" when booking her transportation.

16. Defendant UBER sent Plaintiff's ride request to Defendant PONCE who used the UBER driver application to accept the ride request and picked Plaintiff up.

17. After being picked up Defendant PONCE drugged Plaintiff when he provided her with a bottle of water, which is a common practice by drivers and encouraged by UBER to increase customer satisfaction.

18. Defendant PONCE then made a substantial deviation from the route that Plaintiff had requested.  Defendant UBER made no inquiry into the reason for the deviation and did not alert Plaintiff or the authorities.

19. Plaintiff never arrived at her intended destination. Defendant PONCE drove Plaintiff back to her home, entered and raped her in her own bed.

4.

FIRST AMENDED COMPLAINT

20.  Plaintiff contacted the Los Angeles Police Department and filed a criminal report at approximately 9:30 a.m. on July 21, 2014.

21.  Plaintiff sought treatment at the UCLA Rape Treatment Center, where medical personnel recovered the DNA of the person who had sexually assaulted her. The DNA matched UBER's driver PONCE.

22.  On or about October 24, 2014, the Los Angeles County District Attorney's Office charged UBER's driver Defendant PONCE with two felony charges: Rape of an Unconscious Person and Assault with Intent to Commit Rape.

23.  On or around January 27, 2015, Defendant PONCE pleaded *nolo contendere* to criminal sexual battery and was sentenced to a term in jail. As part of Defendant PONCE's sentence, he is required to register as a sex offender for the rest of his life.

## JURISDICTION AND VENUE

24.  This court has jurisdiction in this matter pursuant to *Code of Civil Procedure* § 410.10 because the accident and/or injury occurred in Los Angeles, California.

25.  Venue is proper in this court pursuant to *Code of Civil Procedure* § 395 and 395.5, in that the incident complained of herein occurred and Defendants' obligations and liability arose in Los Angeles County, California.

## PARTIES

26.  Plaintiff Keather Taylor is, and at all times herein mentioned was an individual residing in Los Angeles, California.

27.  Defendant UBER TECHNOLOGIES, INC. is, and at all times herein mentioned a corporation with its principal place of business in San Francisco, California.

FIRST AMENDED COMPLAINT

28. Based on information and belief, Defendant WALTER ALBERTO PONCE is, and at all times herein mentioned was an individual residing in Los Angeles, California.

29. Defendants at all times herein mentioned were the agents and employees of their co-defendants and in doing the things hereinafter alleged were acting within the course and scope of such agency and the permission and consent of the co-defendants.

30. At all times herein mentioned, Defendant PONCE was acting within the scope of his employment with Defendants, who are liable, but not solely liable, under the principles of *respondeat superior*.

31. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 to 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named defendants is negligently or intentionally responsible in some manner for the occurrences herein alleged, and that the injuries herein alleged were proximately caused by said negligence or intentional acts.

## FIRST CAUSE OF ACTION

### (Sexual Battery- Against Defendant Walter Alberto Ponce)

32. Plaintiff restates and re-alleges all prior paragraphs of this complaint, and hereby incorporates by reference said paragraphs, as though fully set forth herein.

33. At all times herein mentioned, Defendant PONCE, acted with the intent to cause harmful and offensive contact with Plaintiff's breasts, vulva and penetrated Plaintiff's vagina with his penis and as a result of Defendant's actions, sexually offensive contact did, occur.

6.

34. Defendant PONCE's grabbing and touching of Plaintiff's breasts, vulva and penetration of Plaintiff's vagina with PONCE's penis without her consent would offend a reasonable sense of personal dignity.

35. Plaintiff was harmed as a result of PONCE's grabbing and touching of Plaintiff's breasts, vulva and penetration of Plaintiff's vagina with PONCE's penis without her consent.

36. As a direct and proximate result of Defendant PONCE's conduct, Plaintiff sustained physical injury, including, uncondensed sexual intercourse, extreme psychological distress and suffering including anxiety, depression, loss of dignity, suicidal thoughts, restlessness, sleeplessness, and fear of being in her own home.

37. As a further direct and proximate result of Defendant PONCE's conduct, Plaintiff has had to seek medical treatment, including undergoing an invasive rape screening, as well as other medical treatment.

38. As a direct and proximate result of Defendant PONCE's conduct, Plaintiff has had to be treated by and will continue to be treated by psychologists and therapists.

39. As a direct and proximate result of Defendant PONCE's conduct, Plaintiff continues to suffer from extreme psychological distress, anxiety, fear, and depression.

## SECOND CAUSE OF ACTION

**(Negligence - Against Defendant Uber Technologies, INC. and Does 1 to 100)**

40. Plaintiff restates and re-alleges all prior paragraphs of this complaint, and hereby incorporates by reference said paragraphs, as though fully set forth herein.

41. At all times herein mentioned, Defendant UBER and Does 1 to 100 owed a duty of ordinary care to provide a safe transportation environment and

7.

FIRST AMENDED COMPLAINT

1      ensure the safety of individuals such as Plaintiff and to prevent Plaintiff

2      from being exposed to an unreasonable risk of harm.

3   42.   At all times herein mentioned, Defendant UBER had a duty to screen, and

4      investigate the training, qualifications, work and criminal history of

5      Defendant PONCE to determine his suitability to be employed as a driver

6      by Defendant UBER.

7   43.   At all times herein mentioned, Defendant UBER owed Plaintiff a duty to

8      act reasonably towards its customers, specifically, at the time UBER

9      became aware of Defendant PONCE's dangerous proclivities and

10      behaviors UBER had a duty to train, protect, prevent, forbid, suspend, or

11      terminate or supervise PONCE to ensure he did not attack, sexually

12      assault or act violently towards UBER's customers.

13   44.   Prior to hiring PONCE as a driver, and putting him in a position where he

14      would have one-on-one access to vulnerable UBER riders, who were

15      often intoxicated women requesting late night rides, UBER and Does 1

16      through 20, inclusive failed to investigate, inquire, research. or perform a

17      background check on its employees, including PONCE.

18   45.   Plaintiff is informed and believes, and based upon such information and

19      belief alleges that prior to the incident, UBER knew or should have known

20      that PONCE posed a danger to the general public, had a propensity for

21      predatory behavior, demonstrated inappropriate conduct around young

22      women, and seemed unable to conform or correct said conduct.

23   46.   At all times herein mentioned, Defendant UBER knew, or should have

24      known, that drivers employed by UBER would have personal contact with

25      intoxicated customers, often times alone with the driver in the vehicle.

26   47.   At all times herein mentioned, Defendant UBER knew or should have

27      known that customers utilizing UBER services were particularly vulnerable

28      to abuse.  Intoxicated passengers, women passengers, intoxicated

8.

FIRST AMENDED COMPLAINT

1    women passengers and late night ride requests are common for UBER

2    and it is reasonably foreseeable that such passengers are particularly

3    vulnerable to tortious and criminal acts by UBER employee-drivers, such

4    as PONCE.

5    48.   Plaintiff relied upon UBER's promises and representations to protect her

6          from improper, unwanted, uninvited, wrongful and tortious and criminal

7          touching and non-consensual sexual intercourse by its employee-drivers.

8    49.   Based on information and belief, at all times herein mentioned, Defendant

9          UBER the employer of Defendant PONCE knew, or should have known,

10         that PONCE had a propensity for predatory behavior, demonstrated

11         inappropriate conduct around young women, and seemed unable to

12         conform or correct said conduct.

13   50.   At all times mentioned herein, Defendant UBER had a duty to establish

14         policies and procedures to train and to deter its employees' wrongful and

15         tortious and criminal conduct on the job.

16   51.   Plaintiff is informed and believes, and based upon such information and

17         belief alleges that UBER knew that PONCE was not fit to be an UBER

18         driver prior to being hired by UBER.

19   52.   Plaintiff is informed and believes, and based upon such information and

20         belief alleges that Defendant UBER knew that PONCE was not fit to be an

21         UBER driver throughout his employment with UBER.

22   53.   Defendant UBER advertises that it carefully screens its drivers, conducts

23         thorough "industry leading" background checks and even charged riders a

24         mandatory "Safe Rides Fee", however, UBER was not carefully screening

25         its drivers, was not conducting thorough background checks and was

26         knowingly allowing drivers posed a danger to the general public, such as

27         PONCE, to work for UBER and drive lone intoxicated women late at night.

28

FIRST AMENDED COMPLAINT

54.     Instead of terminating the employment of dangerous and unfit UBER drivers, including PONCE, UBER acted with a conscious disregard for the rights and safety of the general public, including Plaintiff when it chose to employ, allow, permit and direct PONCE to continue to transport passengers for UBER, endangering the general public, including Plaintiff.

55.     Defendant UBER and Does 1 to 100, and each of them breached their duty to own, manage, maintain, design, control and operate their business and manage their employees so as to prevent violence, attacks, injuries and sexual assaults on individuals using their services such as Plaintiff.

56.     Defendant UBER and Does 1 to 100, and each of them breached the duty owed to its customers, including Plaintiff, by failing to properly screen, supervise, train and re-train PONCE after they became aware or should have become aware of his propensity for predatory behavior, demonstrated inappropriate conduct around young women, and seemed unable to conform or correct said conduct.

57.     Defendant UBER and Does 1 to 100, and each of them breached the duty owed to their customers, including Plaintiff, by continuing to employ PONCE after they became aware or should have become aware of his propensity for predatory behavior, demonstrated inappropriate conduct around young women, and inability to conform or correct said conduct.

58.     Defendants aforementioned breach was the direct and proximate cause of Plaintiff's sexual battery.

59.     As a direct and proximate result of Defendant PONCE's conduct, and the negligence of Defendant UBER and Does 1 to 100, Plaintiff sustained physical injury, including, uncondensed sexual intercourse, extreme psychological distress and suffering including anxiety, depression, loss of dignity, suicidal thoughts, restlessness, sleeplessness, and fear of being in her own home.

FIRST AMENDED COMPLAINT

60.   As a further direct and proximate result of Defendant PONCE's conduct, and the negligence of Defendant UBER and Does 1 to 100, Plaintiff has had to seek medical treatment, including undergoing an invasive rape screening, as well as other medical treatment.

61.   As a direct and proximate result of Defendant PONCE's conduct, and the negligence of Defendant UBER and Does 1 to 100, Plaintiff has had to be treated by and will continue to be treated by psychologists and therapists.

62.   As a direct and proximate result of Defendant PONCE's conduct and the negligence of Defendant UBER and Does 1 to 100, Plaintiff continues to suffer from extreme psychological distress, anxiety, fear, and depression.

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress- Against Walter Alberto Ponce)

63.   Plaintiff repeats and realleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth herein.

64.   Defendant PONCE, by forcing himself on Plaintiff sexually, grabbing and touching of Plaintiff's breasts, vulva and penetration of Plaintiff's vagina with Defendant PONCE's penis without her consent and despite resistance from Plaintiff, conducted himself in such an extreme and outrageous way.

65.   Such extreme and outrageous conduct was intended to, or recklessly did, cause Plaintiff to experience severe emotional distress, including, without limitation, anxiety, severe fear, depression, humiliation, sleeplessness, and suicidal thoughts.

11.

## FOURTH CAUSE OF ACTION

### (False Advertising- Against Defendant Uber Technologies, INC.)

66.  Plaintiff repeats and realleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth herein.

67.  Under California *Business & Professions Code* §17500, et seq. and Section 43(A) Of The Lanham Act it is unlawful "for any person,... corporation... or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services... or to induce the public to enter into any obligation relating thereto, to make or disseminate... before the public in this state,... in any newspaper or other publication... or in any other manner or means whatever... any statement, concerning that real or personal property or those services... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading..."

68.  Defendant UBER advertises that it carefully screens its drivers; that it conducts "industry leading" background checks; that it is the preferred and "safe" transportation method for the young "party" crowd; and that it is a safer form of transportation than a taxi. Defendant UBER's website states: "A ride you can always trust," and "Uber is dedicated to keeping people safe on the road."

69.  Defendant UBER also claims and markets itself as a "safe" method of transportation for women. Defendant UBER's advertising targets women by stating, claiming and depicting words and images that UBER is "safe", safe for women to ride alone, safer than taxis, safe transportation for women after drinking, and can be trusted.

70.  In or about April of 2014 and at the time of the incident, Defendant UBER charged its riders a mandatory "Safe Rides Fee" when booking

FIRST AMENDED COMPLAINT

1    transportation. Defendant UBER claims the "Safe Rides Fee" was for the

2    screening and background checks of its drivers. Defendant UBER

3    advertises the driver background checks it claims to perform as "industry

4    leading."

5    71.    Defendant UBER's claims that it is "safe", "A ride you can always trust",

6           that "Uber is dedicated to keeping people safe on the road" and safer than

7           a taxi can be true only if UBER has actual data to support such claims and

8           has analyzed such data to confirm said claims. The information regarding

9           Defendant UBER's direct knowledge of thousands of assaults, sexual

10          assaults and rapes perpetrated by its drivers from December 2012

11          through August 2015 renders UBER's claims false.

12   72.    Defendant UBER's claims that it conducts "industry leading" background

13          checks, uses the funds from the mandatory "Safe Rides Fee" to conduct

14          background checks and that it carefully screens its drivers can only be

15          true is Defendant UBER actually conducted said background checks and

16          screenings of its drivers. Based upon information and belief, Defendant

17          UBER did not conduct industry leading background checks, which renders

18          UBER's claims false.

19   73.    Defendant UBER's claims that said background checks and screenings

20          are "industry leading" can only be true the quality of the background

21          checks could verified with actual data to be better than other competitors

22          in the same industry, including taxi services, which based upon

23          information and belief, UBER is unable to prove. The information

24          regarding Defendant UBER's direct knowledge of thousands of assaults,

25          sexual assaults and rapes perpetrated by its drivers from December 2012

26          through August 2015 again renders UBER's claims false.

27   74.    Defendant UBER's claims were likely to deceive reasonable consumers,

28          including Plaintiff and are unlawful under California *Business &*

---

13.

FIRST AMENDED COMPLAINT

*Professions Code* §17500, et seq. and Section 43(A) Of The Lanham Act.

75.  As a result of Defendant UBER's false claims, consumers, including Plaintiff were thus confused into thinking that UBER was safe, safer than a taxi, safe for women and that UBER conducted industry leading background checks on its drivers for the safety of UBER riders.

76.  Defendant UBER's representations, promises and information was likely to mislead, confuse, or deceive consumers, including Plaintiff. Defendant UBER's representations, promises and information lulled consumers, including Plaintiff into false sense of security. Had Plaintiff known the true facts and dangers, she would not have taken an UBER on the night of the attack and would have instead had a friend drive her.

77.  Defendant UBER's deception influenced the purchasing decisions of potential consumers, and customers, including Plaintiff of Defendant UBER's services.

78.  As a direct and proximate result of Defendant UBER's aforementioned conduct, representations and promises, Plaintiff suffered the aforementioned damages.

## FIFTH CAUSE OF ACTION

### (Fraud- Against Defendant Uber Technologies, INC.)

79.  Plaintiff repeats and realleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth herein.

80.  Defendant UBER claims that it is a "safe" method of transportation for women. Defendant UBER's advertising targets women by stating, claiming and depicting words and images that UBER is "safe", safe for women to ride alone, safer than taxis and a safe ride for women after drinking.

FIRST AMENDED COMPLAINT

81.   Defendant UBER claims that its employee-drivers are carefully screened to ensure the safety of passengers. Defendant UBER's website states: "A ride you can always trust," and "Uber is dedicated to keeping people safe on the road."

82.   Defendant UBER also charged riders, including Plaintiff, a mandatory "Safe Rides Fee." Defendant UBER's mandatory "Safe Rides Fee" acted to further perpetuate it's false claims of safety. Defendant UBER was supposed to use the money to conduct thorough "industry leading" background checks on its drivers prior to allowing them to transport passengers, it did not.

83.   Despite its advertising and claims to the public, Defendant UBER was not carefully screening its drivers, was not conducting thorough background checks and was knowingly allowing drivers who posed a danger to the general public, such as PONCE, to work for UBER and transport vulnerable members of the general public, including Plaintiff.

84.   Plaintiff is informed and believes and thereon alleges that from December 2012 through August 2015, Defendant UBER,  through its own internal reporting system and numerous lawsuits, had direct knowledge of thousands of assaults, sexual assaults and rapes perpetrated by its drivers.

85.   Plaintiff is informed and believes and thereon alleges that during all relevant times Defendant UBER was actively engages in obfuscating, covering up and hiding the dangers posed by using Defendant UBER's service and Defendant UBER's drivers, including PONCE.

86.   Plaintiff is informed and believes and thereon alleges that Defendant UBER has a business plan, strategy and practice that involves quickly and confidentially settling allegations of sexual assault by its drivers to prevent the general public and its customers from learning the actual facts

regarding the frequency, nature and severity of the sexual assaults committed by UBER drivers.

87.   Plaintiff is informed and believes and thereon alleges that during all relevant times Defendant UBER, through its own internal reporting system and numerous lawsuits, had direct and constructive notice of thousands of assaults, sexual assaults and rapes perpetrated by its drivers and was actively engaged in seeking confidential settlements with the victims of such crimes, while continuing to make false claims of safety.

88.   As described above, Defendant UBER knowingly made false representations to members of the public, potential customers and customers, including Plaintiff that it carefully screened its drivers, conducted thorough "industry leading" background checks and that it was the preferred "safe" means of transportation.

89.   Plaintiff is informed and believes and thereon alleges that due to the nature of Defendant UBER's active concealment, obfuscation and hiding of the dangers of Defendant UBER's service and Defendant UBER's drivers, that Defendant UBER necessarily possesses the full information of concerning the facts of Defendant UBER's fraudulent conduct, false representations and promises.

90.   In the early in the morning of July 21, 2014, Plaintiff Keather Taylor relied on Defendant UBER's promise of safety and requested a ride from UBER by using her smart phone to request an UBER driver to take her to boyfriend's residence. Defendant UBER's representations, promises and information lulled Plaintiff into false sense of security. Had Plaintiff known the true facts and dangers, she would not have taken an UBER on the night of the attack and would have instead had a friend drive her.

91.   Defendant UBER charged Plaintiff the mandatory one dollar ($1.00) "Safe Rides Fee" when she booked her transportation through Defendant

16.

FIRST AMENDED COMPLAINT

1      UBER's application.

2      92.    Defendant UBER sent Plaintiff's ride request to Defendant PONCE who

3             picked Plaintiff up. After being picked up Defendant PONCE drugged

4             Plaintiff when he provided her with a bottle of water in the vehicle.

5      93.    Plaintiff never arrived at her intended destination. Defendant PONCE

6             drove Plaintiff back to her home, entered and raped her in her own bed.

7      94.    As a direct and proximate result of Defendant UBER's aforementioned

8             conduct, representations and promises, Plaintiff sustained physical injury,

9             including, uncondensed sexual intercourse, extreme psychological

10            distress and suffering including anxiety, depression, loss of dignity,

11            suicidal thoughts, restlessness, sleeplessness, and fear of being in her

12            own home.

13     95.    As a direct and proximate result of Defendant UBER's aforementioned

14            conduct, representations and promises, Plaintiff has had to seek medical

15            treatment, including undergoing an invasive rape screening, as well as

16            other medical treatment.

17     96.    As a direct and proximate result of Defendant UBER's aforementioned

18            conduct, representations and promises, Plaintiff continues to suffer from

19            extreme psychological distress, anxiety, fear, and depression.

20

21                          **SIXTH CAUSE OF ACTION**

22     **(Violation of Business and Professions Code § 17200, et seq. - Against Defendant**

23                          **Uber Technologies, INC.)**

24     97.    Plaintiff repeats and realleges each and every foregoing paragraph set

25            forth above and incorporates the same by reference as though fully set

26            forth herein.

27     98.    California *Business & Professions Code* § 17200 *et seq*. prohibits unfair

28            competition in the form of any unlawful, unfair, deceptive, or fraudulent

                                        17.

1    business practices.

2    99.    During all relevant times, Defendant UBER committed unlawful, unfair,

3           deceptive, and fraudulent acts as defined by California Business &

4           Professions Code § 17200. Defendant UBER's unlawful, unfair,

5           deceptive, and fraudulent business practices as described above.

6    100.   As a result of the unlawful, unfair and fraudulent business practices,

7           Defendants reaped unfair benefits and illegal profits at the expense of

8           Plaintiff members of the public.

9    101.   Plaintiff is informed and believes, and based thereon alleges, that the

10          unlawful, unfair and fraudulent business practices described above

11          present a continuing threat to members of the public because it is

12          believed that Defendant continues to operate in the illegal manner as

13          alleged above.

14   102.   Further, such skirting of California and federal laws presents a threat to

15          the general public in that the enforcement of the relevant laws and

16          regulations is essential to ensure that all California companies and

17          transportation network companies compete equally and that no California

18          company receives an unfair competitive advantage at the expense of its

19          customers and members of the public.

20   103.   As a result of the above-alleged misconduct, Plaintiff has suffered the

21          aforementioned damages, and is entitles to punitive damages pursuant to

22          Business & Professions Code § 17200.

23   104.   As a direct and proximate result of the aforesaid acts and conduct of said

24          Defendant UBER, Plaintiff is entitled to and hereby seeks attorneys' fees

25          as permitted by law and as provided for by §1021.5 of the California Code

26          of Civil Procedure.

27

28

1

## SEVENTH CAUSE OF ACTION

2

**(Punitive Damages pursuant to Civil Code § 3294 - Against Defendant Walter**

3

**Alberto Ponce)**

4   105.   Plaintiff repeats and realleges each and every foregoing paragraph set

5        forth above and incorporates the same by reference as though fully set

6        forth herein.

7   106.   Defendant PONCE, by forcing himself on Plaintiff sexually, grabbing and

8        touching of Plaintiff's breasts, vulva and penetration of Plaintiff's vagina

9        with PONCE's penis without her consent and despite resistance from

10       Plaintiff, conducted himself in such an extreme and outrageous way.

11  107.   The aforementioned acts were undertaken by PONCE with actual malice

12       for Plaintiff and in blatant violation of Plaintiff's rights under the law, and

13       with the intent to injure Plaintiff.  Therefore, Plaintiff is entitled to an award

14       of punitive damages pursuant to *Civil Code* § 3294.

15  108.   As a result of the above-alleged intentional conduct, Plaintiff has suffered

16       harm and the aforementioned damages.

17

18

## EIGHTH CAUSE OF ACTION

19

**(Punitive Damages pursuant to Civil Code § 3294, Business and Professions**

20

**Code § 17200, et seq.  - Against Defendant Uber Technologies, INC.)**

21  109.   Plaintiff repeats and realleges each and every foregoing paragraph set

22       forth above and incorporates the same by reference as though fully set

23       forth herein.

24  110.   Plaintiff is informed and believes, and based upon such information and

25       belief alleges that Defendant UBER knew that PONCE was not fit to be a

26       driver for UBER prior to being hired and throughout his employment with

27       Defendant UBER.

28

FIRST AMENDED COMPLAINT

111. Based on information and belief, at all times herein mentioned, Defendant UBER the employer of Defendant PONCE knew, or should have known, that PONCE had a propensity for predatory behavior, demonstrated inappropriate conduct around young women, and seemed unable to conform or correct said conduct. However, Defendant UBER, in conscious disregard for the rights and safety of the general public, including Plaintiff, allowed, permitted and directed PONCE to continue to drive for UBER, endangering the general public, including Plaintiff.

112. During all relevant times, Defendant UBER advertised that it carefully screened its drivers, conducted thorough "industry leading" background checks and even charged riders a mandatory "Safe Rides Fee", however, UBER was not carefully screening its drivers, was not conducting thorough background checks and was knowingly allowing drivers posed a danger to the general public, such as PONCE, to work for UBER and drive lone intoxicated women late at night.

113. Instead of terminating the employment of dangerous and unfit UBER drivers, including PONCE, UBER acted with a conscious disregard for the rights and safety of the general public, including Plaintiff when it chose to employ, allow, permit and direct PONCE to continue to transport passengers for UBER, endangering the general public, including decedent.

114. Plaintiff is informed and believes and thereon alleges that from December 2012 through August 2015, Defendant UBER, through its own internal reporting system and numerous lawsuits, had direct knowledge of thousands of sexual assaults and rapes perpetrated by its drivers.

115. Plaintiff is informed and believes and thereon alleges that from December 2012 through August 2015, that a search query on Uber's Zendesk customer support platform for "sexual assault" returned 6,160 Uber

FIRST AMENDED COMPLAINT

1        customer support tickets; a search for "rape" returns 5,827 individual

2        tickets. Other variations of the terms yield similarly high returns: A search

3        for "assaulted" shows 3,524 tickets, while "sexually assaulted" returned

4        382 results. Defendant UBER did not adequately investigate the incidents

5        or take any action to prevent future incidents.

6   116.   Plaintiff is informed and believes and thereon alleges that Defendant

7        UBER has a business plan, strategy and practice that involves quickly and

8        confidentially settling allegations of sexual assault by its drivers to prevent

9        the general public and its customers from learning the actual facts

10       regarding the frequency, nature and severity of the sexual assaults

11       committed by UBER drivers.

12   117.   During all relevant times, Defendant UBER claimed that it was a "safe"

13       method of transportation for women. Defendant UBER's advertising

14       targets women by stating, falsely claiming and depicting words and

15       images that UBER is "safe", safe for women to ride alone, safer than taxis,

16       safe transportation for women after drinking, and can be trusted.

17   118.   Defendant UBER falsely claims that its employee-drivers are carefully

18       screened to ensure the safety of passengers. Defendant UBER's website

19       states: "A ride you can always trust," and "Uber is dedicated to keeping

20       people safe on the road."

21   119.   As described above, Defendant UBER knowingly made false

22       representations to members of the public, including Plaintiff that it

23       carefully screened its drivers, conducted thorough background checks,

24       that its background checks were "industry leading" and that it was the

25       preferred "safe" means of transportation.

26   120.   Defendant UBER also charged riders, including Plaintiff, a mandatory

27       "Safe Rides Fee." Defendant UBER's mandatory "Safe Rides Fee" acted

28       to further perpetuate it's false claims of safety. Defendant UBER was

FIRST AMENDED COMPLAINT

1    supposed to use the money to conduct thorough "industry leading"

2    background checks on its drivers prior to allowing them to transport

3    passengers, it did not.

4    121.   Despite its advertising and claims to the public, Defendant UBER was not

5    carefully screening its drivers, was not conducting thorough background

6    checks and was knowingly allowing drivers who posed a danger to the

7    general public, such as PONCE, to work for UBER and transport

8    vulnerable members of the general public, including Plaintiff.

9    122.   Plaintiff is informed and believes and thereon alleges that during all

10   relevant times Defendant UBER, through its own internal reporting system

11   and numerous lawsuits, had direct and constructive notice of thousands of

12   assaults, sexual assaults and rapes perpetrated by its drivers and was

13   actively engaged in seeking confidential settlements with the victims of

14   such crimes, while continuing to make its false and misleading claims of

15   safety.

16   123.   Plaintiff is informed and believes and thereon alleges that during all

17   relevant times Defendant UBER knowingly and actively engages in

18   obfuscating, covering up and hiding the dangers posed by using

19   Defendant UBER's service and Defendant UBER's drivers, including

20   PONCE.

21   124.   Plaintiff is informed and believes and thereon alleges that Defendant

22   UBER intentionally hid the true statistics, dangers and information from

23   consumers, including Plaintiff.  Plaintiff is informed and believes and

24   thereon alleges that Defendant UBER intentionally conceals the dangers

25   associated with using its services so to obtain an unfair advantage,

26   monetary gain and a preferential pre initial public offering business

27   valuation.

28

22.
FIRST AMENDED COMPLAINT

125.  The false claims of safety that Defendant UBER made to the general public, including Plaintiff lulled customers, including Plaintiff into false sense of security. Defendant UBER knowingly endangered its customers, including Plaintiff. Had Plaintiff known the true facts and dangers, she would not have taken an UBER on the night of the attack and would have instead had a friend drive her.

126.  Despite Defendant UBER's prior knowledge of the dangers of its service and its driver, Defendant UBER did not implement or offer its Califonria customers the "send status" safety option or "SOS button" as it had in other places.

127.  Defendant UBER could have required its California drivers to have cameras in their vehicles, like taxis; could have monitor routs and taken appropriate action when UBER drivers deviate from their routs or when UBER riders do not reach their destinations; could have fingerprinted its drivers to enhance safety, deter misconduct, and protect its customers, including Plaintiff. Despite Defendant UBER's actual knowledge of the prior sexual attacks, rapes and dangers, Defendant UBER chose to do nothing to protect its customers, including Plaintiff.

128.  The conduct of Defendant UBER was engaged in with fraud, oppression and/or malice, and was in conscious disregard of the rights and safety of others, including but not limited to the Plaintiff herein so as to warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Keather Taylor prays for judgment against Defendants, and each of them, as follows:

1.  For general damages in an amount within the jurisdiction of this Court, according to proof;

23.

FIRST AMENDED COMPLAINT

1   2.    For economic damages in an amount within the jurisdiction of this Court,
2         according to proof;
3   3.    For interest on all economic damages in the legal amount from the date of
4         the injury to the date of judgment
5   4.    For all medical and incidental expenses according to proof;
6   5.    For punitive/exemplary damages under *California Civil Code § 3294*
7         against Walter Alberto Ponce for his intentional acts;
8   6.    For punitive/exemplary damages under *California Civil Code § 3294*
9         against Uber Technologies Inc.;
10  7.    For punitive/exemplary damages under *Business and Professions Code §*
11        *17200* against Uber Technologies Inc.;
12  8.    For civil penalties under  *Business and Professions Code §§*  17205 and
13        17534.5;
14  9.    For attorneys' fees under *Code of Civil Procedure §1021.4* against Walter
15        Alberto Ponce;
16  10.   For attorney fees under *Business and Professions Code § 17200* against
17        UBER TECHNOLOGIES, INC.;
18  11.   For costs of suit herein incurred; and
19  12.   For such other and further relief as the court may deem proper.
20
21  DATED:      December 1, 2016      GARY A. DORDICK, A LAW CORPORATION
22
23                                    By:   _____
24                                          Gary A. Dordick, Esq.
25                                          Matthew P. Blair, Esq.
26                                          Attorneys for Plaintiff
27
28

FIRST AMENDED COMPLAINT

## JURY DEMAND

Plaintiff, Keather Taylor, hereby demands a trial by jury.

DATED:        December 1, 2016        GARY A. DORDICK, A LAW CORPORATION

By: _____
Gary A. Dordick, Esq.
Matthew P. Blair, Esq.
Attorneys for Plaintiff

25.

FIRST AMENDED COMPLAINT